**FARUQI & FARUQI, LLP**
Lisa T. Omoto (SBN: 303830)
*lomoto@faruqilaw.com*
1901 Avenue of the Stars Suite 1060
Los Angeles, California 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

Timothy J. Peter (*pro hac vice*)
*tpeter@faruqilaw.com*
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771

*Attorneys for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY LA BARBERA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OLÉ MEXICAN FOODS, INC., <br><br> Defendant. | Case No. 5:20-cv-02324-JGB (SPx) <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:  May 8, 2023 <br> Time: 9:00 a.m. <br> Riverside Courtroom 1 <br> Hon. Jesus G. Bernal |

# TABLE OF CONTENTS

I.  ISSUE TO BE DECIDED ..................................................................................... 1

II.  INTRODUCTION ............................................................................................. 1

III.  STATEMENT OF FACTS ................................................................................. 2

    A.  The Products Involved In This Action ................................................... 2

    B.  The Products' Consumer Facing Packaging Uniformly Represents That the Products are Manufactured in Mexico ............................................. 3

    C.  Olé Implements A Targeted Marketing Campaign Which Reinforces The Misperception That The Products Are Made in Mexico ................. 4

    D.  Plaintiff And Class Members Believed the Products are Manufactured in Mexico ............................................................................................. 6

    E.  The Mexican Representations On The Packaging Are Material ........... 7

    F.  The Products Are Not Made in Mexico ................................................. 8

    G.  Class-Wide Harm Can Be Calculated Using Widely Accepted Objective Methodology ........................................................................ 9

IV.  ARGUMENT ................................................................................................... 9

    A.  The Rule 23 Requirements Are Satisfied ............................................ 11

        1.  Rule 23(a)(1) – Numerosity ...................................................... 11

        2.  Rule 23(a)(2) Commonality / Rule 23(b)(3) Predominance ...... 12

            a.  Rule 23(a)(2) - Common Questions Of Fact And Law Exist .............................................................................. 13

            b.  Rule 23(b)(3) – These Common Questions Predominate Over Individual Inquiries ............................................. 14

            c.  Common Questions Predominate With Respect To Plaintiff's Consumer Protection Claims .......................... 15

            d.  Common Questions Predominate With Respect To Plaintiff's Breach of Implied Warranty Claim ................ 17

            e.  Materiality and Reliance Are Subject to Common Proof 17

            f.  Class-Wide Relief Can Be Proven On A Common Basis 18

            g.  Rule 23(b)(3) - A Class Action is Superior To Other Methods Of Adjudication ............................................. 20

        3.  Rule 23(a)(3) - Typicality ......................................................... 21

        4.  Rule 23(a)(4) - Adequacy .......................................................... 23

        5.  Rule 23(b)(2) Injunctive Relief ................................................. 24

V.  CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................... 15

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021) .................................................. 11

*Ballard v. Equifax Check Servs., Inc.*,
   186 F.R.D. 589 (E.D. Cal. 1999) .................................................. 21

*Battle v. Taylor James, LLC*,
   607 F.Supp.3d 1025 (C.D. Cal. 2022) ........................................... 16

*Beck-Ellman v. Kaz USA, Inc.*,
   283 F.R.D. 558 (S.D. Cal. 2012) .................................................. 22

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-cv-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ............... 19

*Briseno v. Conagra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ........................................... 11, 19, 20

*Broomfield v. Craft Brew All., Inc.*,
   No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ........................................................................ 13

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ................................................... 9

*Chavez v. Blue Sky Nat. Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ............................................ 10, 19

*City and Cnty. of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ........................................... 16

*Claiborne v. Church & Dwight Co., Inc.*,
   No. 3:17-cv-00746-L-JLB, 2017 WL5256752 (S.D. Cal. Nov. 13, 2017) ........................................................................ 25

*Cole v. Asurion Corp.*,
   267 F.R.D. 322 (C.D. Cal. 2010) ............................................ 17, 24

*Combe v. Intermark Commc'ns, Inc.*,
    No. CV 09-09127 SJO, 2010 WL 11597517 (C.D. Cal. Nov. 18,
    2010) ................................................................................................ 11

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...................................................................... 18, 20

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ............................................................ 25

*Davidson v. O'Reilly Auto Enters., LLC*,
    968 F.3d 955 (9th Cir. 2020) ...................................................... 10, 25

*Dean v. Colgate-Palmolive Co.*,
    No. EDCV 15-00107 JGB (DTBx), 2018 WL 6265003
    (C.D. Cal. Mar. 8, 2018) ................................................................... 20

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...................................................... 10, 23

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ..................................................... 24

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ...................................................... 12, 19

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) ..................................................... 14

*Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......... 15, 22

*Forrand v. Fed. Exp. Corp.*,
    No. CV 08-1360 DSF, 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ............... 19

*Gonzalez v. United States Immigr. & Customs Enf't*,
    975 F.3d 788 (9th Cir. 2020) ........................................................... 22

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) ..................................................... 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................... 22

-iii-

*Hawkins v. Kroger Co.*,
  337 F.R.D. 518 (S.D. Cal. 2020) .......................................................... 15

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ...................................................... 18, 23

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ............................................................... 10

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012) .......................................................... 18

*Johnson v. City of Grants Pass*,
  50 F. 4th 787 (9th Cir. 2022) ............................................................... 12

*Jt. Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell
  Banker Real Estate Corp.*,
  281 F.R.D. 422 (C.D. Cal. 2012) .......................................................... 17

*Just Film, Inc. v. Bruno*,
  847 F.3d 1108 (9th Cir. 2017) ............................................................. 14

*Kim v. Benihana, Inc.*,
  No. 5:19-cv-02196-JWH-KKx, 2022 WL 1601393
  (C.D. Cal. Mar. 25, 2022) ..................................................................... 16

*Lytle v. Nutramax Lab'ys, Inc.*,
  No. ED CV 19-0835 FMO (SPx), 2022 WL 1600047
  (C.D. Cal. May 6, 2022) ........................................................................ 20

*McCrary v. Elations Co., LLC*,
  No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243
  (C.D. Cal. Jan. 13, 2014) .................................................................. 9, 12

*Menagerie Prods. v. Citysearch*,
  No. CV 08-4263 CAS (FMO), 2009 WL 3770668
  (C.D. Cal. Nov. 9, 2009) ....................................................................... 21

*Metrow v. Liberty Mutual Managed Care LLC*,
  No. EDCV 16-1133JGB, 2017 WL 4786093 (C.D. Cal. May 1,
  2017) ................................................................................................ 21, 22

*Mier v. CVS Pharmacy, Inc.*,
    No. SA CV 20-1979-DOC-(ADSx), 2021 WL 3468951
    (C.D. Cal. Apr. 29, 2021) ................................................................................ 13

*Milan v. Clif Bar & Co.*,
    340 F.R.D. 591 (N.D. Cal. 2021) ..................................................................... 17

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735 (1980) ............................................................................ 16

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F.Supp.3d 1050 (C.D. Cal. 2015) .............................................................. 16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F. 4th 651 (9th Cir. 2022) ........................................................................... 19

*Oshana v. Coca-Cola Co.*,
    No. 04 C 3596, 2005 WL 1661999 (N.D. Ill. July 13, 2005) ........................... 17

*Parkinson v. Hyundai Motor America*,
    258 F.R.D. 580 (C.D. Cal. 2008) ..................................................................... 12

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .......................................................................... 12

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ................................................................ 10, 15

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. Mar. 28, 2010) ....................................................... 22

*Tran v. Sioux Honey Ass'n, Coop.*,
    No. 8:17-cv-00110-JLS-SS, 2020 WL 905571 (C.D. Cal. Feb. 24,
    2020) ............................................................................................................ 13, 14

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ............................................................................ 14

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &*
    *Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ........................................................................ 10, 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 12

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .................................................................. 24

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ................................................... 17, 21

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .................................................................. 16

**Other Authorities**

Fed. R. Civ. P. 23 ................................................... 10, 11, 14, 21, 22, 23, 24

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on May 8, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jesus G. Bernal, of the United States District Court for the Central District of California, located at 3470 Twelfth Street, Riverside, California 92501, Courtroom 1, Tammy La Barbera ("Plaintiff"), on behalf of herself and other similarly situated consumers, will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following Classes:

<u>California Subclass</u>

All California citizens who purchased any of the Products (defined below) at any time beginning four (4) years prior to the filing of this action on November 6, 2020 until May 1, 2022[1] ("Class Period").

<u>California Consumer Subclass</u>

All California citizens who purchased for personal, family or household purposes any of the Products (defined below) during the Class Period.[2]

Plaintiff further will and hereby does move the Court for an Order designating her as Class representative and appointing her counsel, Faruqi & Faruqi, LLP, as Class Counsel. Plaintiff also requests the Court to order the parties to meet and confer and present this Court, within fifteen (15) days of an order granting class certification, with a proposed plan to notice the certified Classes.

Plaintiff's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declarations and [Proposed] Order submitted herewith.  In addition to relying on these documents

---

[1] Recently, Plaintiff learned through discovery that Defendant began manufacturing certain of its Products in Mexico, while continuing to manufacture other Products in U.S. facilities.  The Products made in Mexico began being sold to consumers in California in mid-May 2022.  Therefore, the Class Period ends on May 1, 2022.

[2] The California Subclass and the California Consumer Subclass are collectively referred to herein as the "Class" or "Classes."

1   and Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also intends to rely on
2   any pleadings and documentary evidence she files in connection with her reply brief
3   filed in further support of her motion for class certification, as well as any argument
4   or documentary evidence as may be presented at the class certification hearing, and
5   the complete pleadings and files in this action.

6        This motion is made following the conference of counsel pursuant to Local
7   Civil Rule 7-3 which took place in connection with the Parties' August 2021 Joint
8   Rule 26(f) Report and was further discussed on March 9, 2023.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      ISSUE TO BE DECIDED

Whether the requirements of Rules 23(a) and 23(b)(2) or 23(b)(3) of the Federal Rules of Civil Procedure[3] are satisfied for the Classes.

## II.      INTRODUCTION

Defendant Olé Mexican Foods, Inc. ("Olé" or "Defendant"), the ███ ███████████████████████████████ a year United States tortilla industry, manufactures and sells products under the La Banderita banner. Declaration of Timothy J. Peter ("Peter Decl."), Exhibit ("Ex.") 1 and 2.  The La Banderita products, which include tortillas and are the Products at issue here, are available at retailers throughout California and are specifically ████████████ ████████ Peter Decl., Ex. 3 and 4 ████████████████████.

To remain a contender in the competitive tortilla product industry, Defendant embarked on a marketing campaign designed to specifically target and appeal to the Hispanic community and Mexican food enthusiasts.  By including certain misleading representations on the front label of the Products' packaging, such as the word "Authentic," the brand name "La Banderita" (meaning "the flag" in Spanish), stylized images of the Mexican flag, and the use of Spanish phrases such as "Sabrosísimas," when taken as whole, Defendant leads most California consumers to believe that the Products are made in Mexico, when they are not.

The salient facts of this case warrant class certification. All Class members have been exposed to the same materially identical deceptive packaging throughout the Class period, and common proof can establish whether a "reasonable consumer," objectively, is deceived by the packaging. The materiality of the representations on the packaging that mislead consumers to believe that the product is made in Mexico

---

[3] Hereinafter, the term "Rule" refers to the Federal Rules of Civil Procedure, unless otherwise noted.

is also subject to common proof. Plaintiff further proffers a damages model tied to her theory of liability that is capable of being mechanically applied to pertinent sales data to calculate class-wide damages at the merits phase. These common class-wide issues predominate over individual issues, if any, and a class action is a superior method of adjudicating this dispute. In sum, all the requirements of Rules 23(a) and 23(b)(3), namely, numerosity, commonality, typicality, adequacy, predominance, and superiority are satisfied. Accordingly, this Court should certify the proposed Classes pursuant to Rule 23(b)(3). The Court should also certify an injunctive relief class pursuant to Rule 23(b)(2) for all Products that are currently not being manufactured in Mexico, as Olé has failed to remedy its deceptive conduct regarding those products.

## III. STATEMENT OF FACTS

### A. The Products Involved In This Action

Plaintiff seeks to certify two Classes (*see* Notice of Motion, Class definitions) for the following La Banderita tortilla products: (i) La Banderita Burrito Grande Flour Tortillas 10 count (UPC 273310036) (Peter Decl., Ex. 5); (ii) La Banderita Burrito Grande Flour Tortillas 20 count (UPC 2733101117) (*Id.* at Ex. 6 and 7); (iii) La Banderita Sabrosísimas Corn Tortillas 80 count (UPC 2733111142) (*Id.* at Ex. 8); (iv) La Banderita Sabrosísimas Soft Taco Flour Tortillas 10 count (UPC 2733101144) (*Id.* at Ex. 9); (v) La Banderita Sabrosísimas Burrito Flour Tortillas 8 count (UPC 2733101146) (*Id.* at Ex. 10); (vi) La Banderita Whole Wheat Fajita Flour Tortillas 16 count (UPC 2733100048) (*Id.* at Ex. 11); (vii) La Banderita Whole Wheat Soft Taco Flour Tortillas 10 count (UPC 2733103222) (*Id.* at Ex. 12); (viii) La Banderita Mega Burrito Flour Tortillas 6 count (UPC 2733101072) (*Id.* at Ex. 13); and (ix) La Banderita Soft Taco Flour Tortillas 10 count (UPC 2733100033) (*Id.* at Ex. 14) (the "Products"). *Id.* at Ex. 15 (Olé's Response to Plaintiff's Interrogatory No. 1). Importantly, as admitted by Defendant, there have been ███████████████ to the Mexican Representations (defined below) on the

Products' labels during the Class Period.  Peter Decl., Ex. 15 at 7-8 (Olé's Response to Plaintiff's Interrogatory No. 6); Peter Decl., Ex. 16 Deposition Transcript of Edgar Moreno ("Moreno Dep. Tr.") at 31:23-32:16.

According to third-party research utilized by Defendant, ███████████
████████████████████████████████████████████████████████████
███████████████████████—Defendant made it a priority to grow its Products' sales in California. Peter Decl., Ex. 17; *See* Peter Decl., Ex. 18 Deposition Transcript for Karl Joseph Ketchum ("Ketchum Dep. Tr.") at 140:7-16 ████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████.  Indeed, the Products' sales have been in the millions in California during each year of the Class Period, and ████████████████████████████████████ throughout the Class Period. Peter Decl., Ex. 19.

**B.    The Products' Consumer Facing Packaging Uniformly Represents That the Products are Manufactured in Mexico**

Tortillas originated in Mexico and are a staple of Mexican cuisine.  *See* First Amended Complaint ("FAC") (Dkt. No. 65), ¶ 3; *see also* Defendant's Answer to Plaintiff's Complaint ("Answer") (Dkt. No. 27), ¶ 3.  Olé is the ████████████
████████████████████████ and distributes its products domestically and internationally in countries including, but not limited to, Australia, Puerto Rico, Brazil and Canada.  *See* Ketchum Dep. Tr. at 121:17-24; Moreno Dep. Tr. at 80:5-10; 123:25-124:3. As confirmed by third-party marketing research utilized by Defendant, consumers value tortilla products that are authentically made in Mexico. FAC ¶ 4; Peter Decl., Ex. 20 ("████████████████████████████████████
████████████████"); *Id.*, Ex. 21 ("████████████████████████████████
████████████████████████████████████████████████████████████
████████████████"); *Id.*, Ex. 3 ("████████████████████████████



."); *Id.*, Ex. 22

("

"); Moreno Dep. Tr. at 99:1-100:5 (

").  To achieve this goal and differentiate the Products in a highly competitive market, the consumer facing front labels of the Products' packaging bombards consumers with imagery and language leading the reasonable consumer to believe that the Products are manufactured in Mexico.

Specifically, all of the Products have the Mexican flag on the front and center of the package.  FAC ¶¶ 2, 15.  The Product labels also contain the phrases "El Sabor de Mexico!" or "A Taste of Mexico!". *Id.* Some of the Products contain a circular logo with the Mexican flag and the word "Authentic." *Id.* ¶ 16.  Several of the Products also contain Spanish words or phrases such as "Sabrosísimas," which is an "endearing" way of saying "delicious," and "Tortillas de Maiz". *Id.*; Moreno Dep. Tr. at 44:8-23. Additionally, the brand name "La Banderita," meaning "the flag", is a reference to the Mexican flag and is displayed prominently on all the Products.[4]  FAC ¶ 15; Peter Decl., Exs. 5-14.  There have been

. Moreno Dep. Tr., 41:18-42:8.

## C.   Olé Implements A Targeted Marketing Campaign Which Reinforces The Misperception That The Products Are Made in Mexico

Olé's attempts to mislead consumers into believing that the Products are manufactured in Mexico are not limited to the Products' packaging. Olé also implements a targeted advertising and marketing campaign designed to resonate with the Hispanic community, with the primary focus of convincing consumers that

_____

[4] The foregoing representations, individually and collectively, are defined as the "Mexican Representations" or the "Challenged Representations."

the Products are manufactured in Mexico. Peter Decl., Ex. 23 (" ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Moreno Dep. Tr. at 120:23-121:18 ( ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Indeed, in a ▮▮▮▮▮▮▮▮

marketing presentation, research showed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ considered by consumers when purchasing

soft tortillas. Peter Decl., Ex. 24; *Id*., Ex. 21 (" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").   For example, in a ▮▮▮▮▮▮▮▮▮▮

presentation by one of Defendant's consumer research firms, ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮'s research found that the " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id*., Ex. 25.  The deposition

testimony of Olé's President of Sales and Marketing confirms that the Products are

meant to appeal to consumers who are looking for a ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮. Moreno Dep. Tr., 98:3-100:5 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮"); 113:20-25.

    To capitalize on this, Defendant engaged in a series of advertising campaigns

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in an effort to appeal to the Hispanic community.

Peter Decl., Ex. 26 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *Id.,* Ex. 27 ( ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *Id.,* Ex. 28 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮);

*Id.,* Ex. 29 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮").  For ▮▮▮▮▮▮▮▮▮▮, Olé also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the purpose of marketing its

Products to consumers and maximizing sales. *Id.* Ex. 30; Moreno Dep. Tr. at

107:10-108:21.



With respect to the ███████████ campaign in ███, Defendant focused on featuring its La Banderita tortillas as part of the celebration, ██████████ ███████████████████████████████████████████████████████ ██████████████████████████████████" Peter Decl., Ex. 31.  According to Enrique Botello, Defendant's marketing director, the campaign was a resounding success, as it was "█████████████████████████████████████████ █████████████" Id., Ex. 32.  Additionally, Olé trademarked the phrase "Taste the Tradition" ████████████████████████████████████████████████████ ██████. Moreno Dep. Tr. at 71:3-72:3; Peter Decl., Exs. 33 and 34.

**D.  Plaintiff And Class Members Believed the Products are Manufactured in Mexico**

Olé's packaging is effective at misleading consumers that the Products are made in Mexico. During the Class Period, Plaintiff purchased a few of the Products. Peter Decl., Ex. 35 Deposition Transcript for Tammy La Barbera ("La Barbera Dep. Tr."), at 33:25-34:5; Declaration of Tammy La Barbera ("La Barbera Decl.") at ¶¶ 3-4.  Plaintiff's belief that the Products were made in Mexico was one of the factors she considered in deciding to purchase the Products. La Barbera Dep. Tr. at 19:20-24;  22:10-15;  43:4-20;  45:2-5;  81:19-82:2. ███████ ████ █████████ ████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████, Olé modified the back labels of those Products to add the phrase "Product of Mexico" while continuing to maintain that that Products were "Manufactured in U.S.A.," thus resulting in further confusion about the Products' origin. Moreno Dep. Tr. at 38:3-25; 52:13-53:6; 106:7-21; Peter Decl., Ex. 38; La Barbera Decl., ¶ 5.

Class members have been similarly deceived. Plaintiff has retained Dr. J. Michael Dennis, the current Senior Vice President of NORC (an affiliate of the University of Chicago and one of the premier survey organizations in the U.S.),

holding 25 years of experience in designing and conducting surveys, to conduct a survey to empirically measure consumer perception and the materiality of the challenged representations. *See* Peter Decl., Ex. 40 Declaration and Expert Report of J. Michael Dennis ("Dennis Decl."), ¶¶ 5-6, 13. Following well-established survey techniques and principles, when shown three different Product packages corresponding to the at-issue Products with the largest sales during the proposed Class Period, Dr. Dennis found that 57.9% of respondents, all from California, perceived the packaging for the at-issue Products to convey that the Products were made in Mexico. *Id.* ¶¶ 31-36.  Specifically, Respondents were shown packaging of the Burrito Grande Flour Tortillas, Soft Taco Flour Tortillas, and Sabrosísimas Corn Tortillas.  *Id.*  ¶ 35.  For each of the three Products that were used by Dr. Dennis in his survey, the figures were not statistically significantly different, meaning that consumer deception occurs regardless of which of the three tested Products were assigned for the survey. *Id*. ¶ 37.  Accordingly, members of the Classes are deceived by Olé's misleading packaging, regardless of which Products they purchased.

### E.    The Mexican Representations On The Packaging Are Material

The belief that the Products were manufactured in Mexico is material to Plaintiff and the Class members. Had Plaintiff known at the time she purchased the Products that they were made in the U.S. and not in Mexico, she would not have purchased them or would have paid less for them. *See* La Barbera Decl.  ¶ 6.

As to the Classes, Dr. Dennis' survey also empirically tested whether a Mexico versus a non-Mexico manufacturing location of the Products is material to consumers, *i.e.*, whether it affects their purchasing decisions. The answer was a resounding yes. After a demographically representative group of consumers was presented with the packaging of the La Banderita Burrito Grande Product sold by Defendant, Dr. Dennis provided respondents with a purchasing choice between a Product made in Mexico and a Product not made in Mexico, with all other variables being identical.  Dennis Decl. ¶¶ 25, 54-59. The results demonstrated that 62% of

California respondents preferred to purchase the product made in Mexico, while only 29% selected the product not made in Mexico, and 9% did not have an opinion. *Id.* ¶ 38.  Thus, whether the Products are made in Mexico is material to consumers.

This materiality is not only evidenced by Dr. Dennis' findings, but also Olé's own statements and documents. For example, in an email to █████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ Peter Decl., Ex. 36.  Similarly, in an email to █████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

*Id.* at Ex. 37. Additionally, Defendant knows that the Products █████████████

█████████████████████████████████████████████████████████ *Id.*

at Ex. 3.  Lastly, research utilized by Defendant shows that ████████████████

██████████████████████████ most important attributes considered by consumers when purchasing soft tortillas. *Id.* at Ex. 24.

### F.     The Products Are Not Made in Mexico

None of the Products sold in California during the Class Period were made in Mexico. *See* Answer, ¶ 24 ("Defendant admits the Products at issue are not made in Mexico"); *see also* Moreno Dep. Tr. at 106:7-21 ("███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ ").  Additionally, █████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ *Id.* at 189:14-190:15.

### G.     Class-Wide Harm Can Be Calculated Using Widely Accepted Objective Methodology

Plaintiff will proffer evidence showing that there exists a method to measure and quantify the effect of the Mexican Representations on the packaging of the Products, and a method to compute the price premium and associated damages stemming from the use of the Mexican Representations on the Products.  Dennis Decl., ¶¶ 61-122 (describing nature of conjoint surveys, summarizing the steps he will follow to design and implement the conjoint survey using best practices, and obtaining an appropriate sample of survey respondents).  As discussed above, Plaintiff has retained survey expert Dr. J. Michael Dennis, who has concluded that a choice-based conjoint survey is appropriate for measuring any price premium solely attributable to the Challenged Representations.  *Id.* ¶ 26.

In discussing his proposed conjoint survey, Dr. Dennis identifies the product attributes that will be included in the survey (brand, label claims and price) and the reasons for selecting these attributes.  *Id.* ¶¶ 88-95.  Finally, Dr. Dennis's proposed methodology follows accepted conjoint survey design principles.  *Id.* ¶¶ 73, 75-77. Accordingly, Plaintiff has provided a model consistent with her theory of liability and that is capable of measuring class-wide damages.

## IV.     ARGUMENT

Public policy strongly favors certification of consumer class actions like the one before the Court. Indeed, "[c]lass action certifications to enforce compliance with consumer protection laws are desirable." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (internal quotation marks omitted). Recognizing this policy, district courts in the Ninth Circuit routinely certify consumer class actions arising from alleged violations of the FAL, UCL, and CLRA pursuant to Rule 23(b)(3). *See*, *e.g.*, *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, at *17 (C.D. Cal. Jan. 13, 2014) (certifying class under FAL, UCL, and CLRA based on deceptive packaging and marketing

-9-

materials); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (certifying a California UCL and CLRA class of purchasers); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 375-80 (N.D. Cal. 2010) (certifying class under CLRA and UCL based on deceptive packaging and marketing materials).

Class certification is appropriate when the court finds that the requirements of Rule 23 are met. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010). First, pursuant to Rule 23(a), Plaintiffs are required to demonstrate "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). While the Court should conduct a "rigorous analysis" of the Rule 23(a) factors, this "does not allow for an in-depth examination of the underlying merits of the case". *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 974 (9th Cir. 2020) (internal quotation marks omitted). Rather, this examination should only extend as to "whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011).

"In addition to meeting the numerosity, commonality, typicality, and adequacy prerequisites, the class action must fall within one of the three types specified in Rule 23(b)." *Hyundai*, 926 F.3d at 556.  Under Rule 23(b)(3), the court may certify a class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Further, Rule 23(b)(2) permits the court to certify a class where the party against whom the relief is sought

-10-

"has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]" *Id.*

As discussed below, each requirement set forth under Rule 23(a), (b)(2), and (b)(3) is satisfied. Therefore, the Classes should be certified.

### A. The Rule 23 Requirements Are Satisfied

#### 1.   Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). While the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable. *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 398 (N.D. Cal. 2021).

As discussed in Section III.A, Olé's substantial sales of the Products in California demonstrate that joinder is impracticable. Despite there being 9 Products at issue in this action, Olé has sold over ███████████████████████████████████████████████████████████████. Peter Decl., Ex. 19. Additionally, Olé has ███████████████████████████████ throughout the Class Period and ███████████████████████████████████████████████████████████████. *See* Ketchum Dep. Tr., 88:3-89:7.  Given these figures and data, the Classes clearly satisfy the numerosity requirement.[5] *Combe v. Intermark Commc'ns, Inc.*, No. CV 09-09127 SJO (PJWx), 2010 WL 11597517, at *4 (C.D. Cal. Nov. 18, 2010) ("where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

In addition, there is no requirement at the class certification stage to show a reliable way to identify class members. *See Briseno v. Conagra Foods, Inc.*, 844

---

[5] Following a meet and confer between the parties, Defendant indicated it will not contest numerosity.

F.3d 1121, 1132 (9th Cir. 2017) (a separate administrative feasibility prerequisite to class certification is not compatible with the language of Rule 23 and inability to identify class members is not a bar to class certification). Nonetheless, here Class members can be identified based on objective criteria, such as the product purchased and the date and location of purchase. And even without documentary proof, Class members may self-identify by declaring under oath that they purchased the product at issue during the class period. *See McCrary*, 2014 WL 1779243, at * 7-8 (C.D. Cal. Jan. 13, 2014). Thus, the members of the Classes are ascertainable.

2.     <u>Rule 23(a)(2) Commonality / Rule 23(b)(3) Predominance</u>

Common questions of law and fact permeate Plaintiff's claims in this action, satisfying Rule 23(a)(2).  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  Commonality is met when a plaintiff's claims "depend on a common contention" that is "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  However, "[i]t is not necessary that '[a]ll questions of fact and law ... be common to satisfy the rule.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted). Instead, Rule 23(a)(2) only requires that there be at least one issue of law or fact common to the class. *Id.; Johnson v. City of Grants Pass,* 50 F. 4th 787, 804 (9th Cir. 2022) (citing *Wang v. Chinese Daily News, Inc.,* 737 F. 3d 538, 544 (9th Cir. 2013); *Parkinson v. Hyundai Motor America,* 258 F.R.D. 580, 594 (C.D. Cal. 2008) ("The threshold for establishing commonality under Rule 23(a) is relatively low.").

Notably, the Ninth Circuit has held that commonality does "not require complete congruence." *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006). This is particularly true in the context of consumer protection class-actions like this one. As the Ninth Circuit further explains, "[t]he Advisory Committee on Rule 23 considered the function of the class action mechanism in the context of a fraud case" and found that a "'fraud perpetrated on numerous persons by the use of

similar misrepresentations may be an appealing situation for a class action.'" *Id.* (quoting Advisory Committee Notes to 1966 Amendments, Subdivision (b)(3)). For this reason, "[the Ninth Circuit] has followed an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'" *Id.* As established below, Olé's marketing and packaging of the Products involve a common course of conduct which deceives consumers into believing the Products are made in Mexico. These common issues substantially predominate over any individual inquiries.

a.   Rule 23(a)(2) - Common Questions Of Fact And Law Exist

Common questions of law and fact lie at the heart of this action because each member of the Classes was uniformly exposed to Olé's Product packaging at the point of purchase. *Mier v. CVS Pharmacy, Inc.*, No. SA CV 20-1979-DOC-(ADSx), 2021 WL 3468951, at *4 (C.D. Cal. Apr. 29, 2021), reconsideration denied, No. SA CV 20-01979-DOC-ADS, 2021 WL 3468953 (C.D. Cal. June 11, 2021) ("There is no question that all class members were exposed to the product packaging; this suffices to show commonality."); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-00110-JLS-SS, 2020 WL 905571, at *4 (C.D. Cal. Feb. 24, 2020); *see also* Section III.B (demonstrating the uniformity and content of Olé's Product packaging at the point of purchase).

Thus, one of the primary common questions here is: whether Olé's Product packaging deceives a reasonable consumer into believing the tortillas are made in Mexico. *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) (finding that, "[n]umerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer.") (citing cases); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607-608 (N.D. Cal. 2018) (finding "the

commonality requirement [is] satisfied" where plaintiffs argue that the common question is whether defendant's "label [is] likely to deceive reasonable consumers" (citing cases)). "[V]ariation among class members in their motivation for purchasing the product [and] the factual circumstances behind their purchase . . . does not defeat the relatively 'minimal' showing required to establish commonality." *Tran*, 2020 WL 905571, at *4 (citation omitted). Although not a requirement at this stage, Plaintiff has demonstrated that consumers are actually deceived by the alleged deceptive representations.

b.   Rule 23(b)(3) – These Common Questions Predominate Over Individual Inquiries

Because common questions of law and fact lie at the core of this action, Rule 23(a)(2) is satisfied, triggering the (b)(3) analysis on whether these questions predominate over individual ones. *Just Film, Inc. v. Bruno,* 847 F.3d 1108, 1120 (9th Cir. 2017) ("The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case[.]") (internal quotation marks and citations omitted). Rule 23(b)(3) authorizes class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

Questions of fact and law predominate over individual inquiries when their determination can be resolved for all members in a single adjudication. *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 931 (9th Cir. 2018). Because the uniform packaging of the Products drives the common question of deception, resolution of this action is subject to common proof. *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *4 (N.D. Cal. July 15, 2016) (holding that "[i]n cases alleging a deceptive advertising scheme under the UCL, CLRA, and FAL, it is well-settled that where 'numerous consumers are exposed to the same

-14-

dubious practice by the same seller...proof of the prevalence of the practice as to one consumer would provide proof for all.'")(citation omitted); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Like commonality, the predominance inquiry tests only the plaintiff's theory of the case, not whether the merits of the theory are proved. *See ConocoPhillips Co.*, 593 F.3d at 808-09.

Plaintiff seeks certification of the Classes for: (1) Violation of the CLRA; (2) Violation of the UCL; (3) Violation of the FAL; and (4) Breach of Implied Warranty. Here, common questions predominate over individualized issues with respect to all these claims, for both of the proposed Classes.

c.   Common Questions Predominate With Respect To
Plaintiff's Consumer Protection Claims

Plaintiff's California consumer protection claims are subject to uniform resolution: "[f]or purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014). The determinations necessary to adjudicate the CLRA, FAL, and UCL are not made with regard to each class member, but under a single, objective, and common "reasonable consumer" standard. *See Hawkins v. Kroger Co.*, 337 F.R.D. 518, 543 (S.D. Cal. 2020) ("'California consumer protection laws take an objective approach of the reasonable consumer, not the particular consumer.'") (citation omitted).

Indeed, the "objective test renders claims under the UCL, FAL and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait*, 289 F.R.D. at 480. For these reasons, "whether or not Defendant[]'s claims [on the Products] are misleading is an objective, classwide inquiry for the purposes of the UCL, FAL and the CLRA." *Forcellati*, 2014 WL 1410264, at *9.

Common questions also predominate as to the "unfair,", "unlawful,", and "fraudulent" prongs of the UCL. Under the "unfair" prong of the UCL, "[t]he court

-15-

must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . " *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also Battle v. Taylor James, LLC,* 607 F.Supp.3d 1025, 1045 (C.D. Cal. 2022) (stating the same and that the standard for the "unfair" prong of the UCL "is intentionally broad."). Olé's efforts to persuade consumers to purchase the Products, and the harm resulting from these purchases, are issues common to members of the Classes. Deceiving consumers provides no utility. Similarly, under the "unlawful prong," unlawful business acts include "any practices forbidden by law[.]" *Id.* at 1044 (citation omitted). Defendant's breaches of the FAL, CLRA, and other laws alleged herein are predicate violations supporting claims under the unlawful prong of the UCL. *See City and Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 685-689 (N.D. Cal. 2020). Finally, regarding the "fraudulent" prong, Plaintiff must establish that "members of the public are likely to be deceived" by Defendant's misrepresentations, which is an objective test subject to common proof, as described above. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted). Therefore, predominance is satisfied for Plaintiff's UCL, FAL, and CLRA claims.

While Plaintiff is not required to delve into the merits of their claims, she has demonstrated that consumer deception can, and has, been proven on a common basis. Dr. Dennis' conclusion that 57.9% of consumers are deceived serves as common proof of this deception. *See* Section III.D; *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050, 1112 (C.D. Cal. 2015) (finding survey evidence that 37.1% and 41.5% of consumers were deceived "more than suffice[s] to demonstrate that a reasonable consumer could find materiality."); *Kim v. Benihana, Inc.*, No. 5:19-cv-02196-JWH-KKx, 2022 WL 1601393, at *11 (C.D. Cal. Mar. 25, 2022) (finding survey evidence that 36% of consumers were deceived "suffices as evidence to support the argument that a reasonable consumer would be deceived…"); *Oshana v. Coca-Cola Co.*, No. 04 C 3596, 2005 WL 1661999, at *9

(N.D. Ill. July 13, 2005) (survey evidence that 24% of consumers found advertisement misleading was sufficient).

### d. Common Questions Predominate With Respect To Plaintiff's Breach of Implied Warranty Claim

As with Plaintiff's consumer claims, common questions predominate over Plaintiff's breach of implied warranty claim. Indeed, the central question to Plaintiff's consumer claims—whether Olé's Product packaging deceives a reasonable consumer into believing the tortillas are made in Mexico—remains central to Plaintiff's breach of implied warranty claim. Thus, common questions predominate with respect to Plaintiff's breach of implied warranty claim. *See Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 599 (N.D. Cal. 2021) (finding common questions predominated with respect to plaintiffs' California breach of implied warranty claims, as there "will be a common, objective inquiry asking whether the challenged statements created warranties that were breached, and whether the products failed to conform to the promises or affirmations of fact made on the container or label.") (quotations omitted).

### e. Materiality and Reliance Are Subject to Common Proof

Questions of materiality and reliance do not pose a bar to certification in this action. Common proof of reliance, and therefore materiality, is established as every class member has been exposed to the Products' uniform, deceptive packaging. *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (holding that, for UCL and CLRA claims, an "inference of reliance arises as to the entire class" when "the material misrepresentations were made to all class members."); *see also Cole v. Asurion Corp.*, 267 F.R.D. 322, 328 (C.D. Cal. 2010). Further, as with commonality, the misrepresentation in question need not be identical for an inference of class-wide reliance. *Jt. Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 429-34 (C.D. Cal. 2012) (explaining that misrepresentations need only be "sufficiently similar to justify an

-17-

inference of class-wide reliance[.]").   Here, for each of the three Products that were used by Dr. Dennis in his survey, the figures were not statistically significantly different, meaning that consumer deception occurs regardless of which of the three tested Products they were assigned for the survey. Dennis Decl. ¶ 37.  Accordingly, Dr. Dennis' survey establishes that members of the Classes are deceived by Olé's misleading packaging, regardless of which Products they purchased.

As established in Section III.E, the Mexican Representations on the Products' packaging are material. The results of Dr. Dennis' survey demonstrate that consumers prefer to purchase a tortilla made in Mexico. *Id.* ¶¶ 25, 54-59. Further, materiality is established by Olé's own understanding, as demonstrated above, that consumers' purchasing decisions are influenced by the notion that the La Banderita tortillas are made in Mexico. *See, e.g., Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("A representation is 'material' . . . if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'").

In any event, because materiality is judged on the objective, reasonable consumer standard, its determination is not only subject to common proof, but better suited for resolution at a later stage. *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558-59 (S.D. Cal. 2012) (holding that "California's consumer protection laws evaluate materiality under a reasonable person standard, not an individualized basis" and that materiality "is a question of fact to be determined at a later stage."). Therefore, materiality and reliance pose no hindrance to certification of the Classes.

f.   Class-Wide Relief Can Be Proven On A Common Basis

In *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013), the Supreme Court held that, in order to meet the predominance prong for class certification, a plaintiff must establish that "damages are capable of measurement on a classwide basis" and that "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability

case. . . '" (citation omitted). The Ninth Circuit has long held that individual damage calculations alone cannot defeat class certification. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F. 4th 651, 668-669 (9th Cir. 2022) ("a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones.") (citing cases). Thus, to satisfy Rule 23(b)(3)'s predominance requirement, Plaintiff need only present a method of calculating damages that is consistent with their theory of liability. *See Forrand v. Fed. Exp. Corp.*, No. CV 08-1360 DSF (PJWx), 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013); *Chavez*, 268 F.R.D. at 379.

Plaintiff's theory of liability and damages is that reasonable consumers paid excess money, *i.e*., a price premium, for the Products under the mistaken belief that the Products were made in Mexico. In the Ninth Circuit, a price premium is the proper method of restitution to Class members in a consumer class action like this one. *See Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received."). In fact, the Ninth Circuit has affirmed a district court's certification of a consumer-fraud class action which "propose[d] to measure" damages through a "classwide price premium attributable" to the products' labeling. *Briseno*, 674 F. App'x at 657.

Here, as outlined in Section III.G, Plaintiff proposes a damages model tied to her theory of liability. Plaintiff's damages model involves a two-pronged approach. <u>First</u>, Dr. Dennis' empirical surveys establish that consumers believe, based on the product packaging, that the Products are made in Mexico, and further, that this belief is material to them. <u>Second</u>, having established that the packaging of the Products is misleading and that the Mexican Representations are material, Dr.

-19-

Dennis proposes a choice-based conjoint survey, a widely accepted methodology both in market research and consumer class action litigation, to calculate a price premium. *See, e.g., Briseno*, 674 F. App'x at 657 (agreeing with district court's conclusion that conjoint analysis was sufficient to survive class certification); *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-00107 JGB (DTBx), 2018 WL 6265003, at *9 (C.D. Cal. Mar. 8, 2018), aff'd, 772 F. App'x 561 (9th Cir. 2019), and aff'd, 772 F. App'x 561 (9th Cir. 2019); *Lytle v. Nutramax Lab'ys, Inc.*, No. ED CV 19-0835 FMO (SPx), 2022 WL 1600047, at *17 (C.D. Cal. May 6, 2022) ("Conjoint surveys, like the one proposed by plaintiffs' expert, are a well-established method for measuring class-wide damages in CLRA mislabeling cases."); *see also* Dennis Decl. ¶ 26.

Dr. Dennis has designed and will conduct a conjoint analysis to isolate and quantify the market price premium associated with the Mexican Representations, which can then be used to calculate the amount of restitution and damages owed to the Classes. *See* Dennis Decl. ¶¶ 61-122 (describing nature of conjoint surveys, summarizing the steps he will follow to design and implement the survey using best practices, and obtaining an appropriate sample of survey respondents). Dr. Dennis also identifies the product attributes that will be included in the survey (brand, label claims, and price), and the reasons for selecting these attributes. *Id.* at ¶¶ 88-95. Finally, Dr. Dennis's proposed methodology follows accepted conjoint survey design principles. *Id.* ¶¶ 73, 75-77.

In sum, Plaintiff has satisfied *Comcast* because she has proffered a scientifically-accepted method for ascertaining damages on a class-wide basis that comports with her theory of liability.

g.    <u>Rule 23(b)(3) - A Class Action is Superior To Other Methods Of Adjudication</u>

Rule 23(b)(3) provides four factors in addressing the superiority of a class action: "(A) the class members' interests in individually controlling the prosecution

or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Here, all four factors favor certification.

First, the price of the La Banderita tortillas does not provide the financial incentive necessary for individual consumers to pursue this action. Peter Decl., Ex. 1 (████████████████████████); *Metrow v. Liberty Mutual Managed Care LLC*, No. EDCV 16-1133JGB (KKx), 2017 WL 4786093, at *15 (C.D. Cal. May 1, 2017). Moreover, individual consumers are not likely aware of their rights against misleading, deceptive marketing practices, such as those taken by Olé. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999). Second, "it does not appear that any members of the class have commenced any other litigation concerning the controversy alleged herein." *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *19 (C.D. Cal. Nov. 9, 2009). Third, in furtherance of public policy aiding consumers, "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Ballard*, 186 F.R.D. at 600. Finally, Plaintiff's and members of the Classes' ability to adjudicate all their claims efficiently in a unified mechanism falls within the policy favoring class actions. *Wiener*, 255 F.R.D. at 672 ("[P]ermitting the potential class members, who individually would be unable to vindicate their rights, to collectively assert their causes of action is consistent with the primary purpose of a Rule 23(b)(3) class action."). For these reasons, a class action is far superior to pursuing the Class members' claims individually.

### 3. Rule 23(a)(3) - Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3).

In the Ninth Circuit, typicality is satisfied if the other class members "have the same or similar injury, [] the action is based on conduct which is not unique to the named plaintiffs, and [] other class members have been injured by the same course of conduct." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020) (citation omitted). Accordingly, "typicality is generally satisfied if the plaintiff's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Metrow*, 2017 WL 4786093, at *7 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Courts find typicality met in cases where defendants utilize "sufficiently similar" labeling claims or omissions. *See, e.g., Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012) (certifying claims on behalf of all models in "heating pad" product line where all "heating pads contain similar omission[s]" and were "sufficiently similar"). This is because "the typicality inquiry . . . turns on Plaintiffs' legal theory, not the 'specific facts from which it arose.'" *Forcellati*, 2014 WL 1410264, at *10. For this reason, Plaintiff may represent all members of the Classes, regardless of which Product she purchased. *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010) ("The typicality requirement does not mandate that the products purchased . . . must be the same as those of absent class members.").

Here, the typicality requirement is satisfied. As discussed in Section III.D-E, the harm, materiality, and deception pertaining to Class members parallels those of the Plaintiff. Plaintiff purchased the Products during the Class Period. Furthermore, Plaintiff's belief that the Products were made in Mexico was one of the factors she considered in deciding to purchase the tortillas. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 479 (C.D. Cal. 2012) (finding typicality when "each named plaintiff testified that she would not have purchased Serum or would have paid less for Serum had she known it had flammable characteristics."). Moreover, Plaintiff was willing to pay more for the Products because she believed that they were made

-22-

in Mexico. Therefore, Plaintiff shares an injury with the Classes that "is not unique to" her and which occurred out of the same "course of [deceptive] conduct[.]" *Ellis*, 657 F.3d at 984 (citation omitted). Thus, the typicality requirement is satisfied. Moreover, for the same reason, Plaintiff also has standing. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (when a consumer purchases merchandise on the basis of false information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing).

### 4.   Rule 23(a)(4) - Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is a two-part test: "(1) [D]o the [representative] plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the [representative] plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, both criteria are met.

First, the interests of Plaintiff and Class members are aligned and there are no conflicts of interest. As discussed above, Plaintiff purchased the La Banderita tortillas, reasonably believing that, based on the Products' packaging, the tortillas were made in Mexico. *See* Section III. D. Her individual and class claims arise from the same course of deceptive conduct and Plaintiff seeks remedies equally applicable and beneficial to the Classes.

Second, Plaintiff has played an active role in this litigation and she is prepared to continue to litigate this case after a ruling on certification by testifying at trial. La Barbera Dep. Tr. 35:7-21; 36:7-39:16; 86:6-88:24; La Barbera Decl. ¶ 8. Indeed, Plaintiff has demonstrated her commitment to vigorously pursuing this action for the Classes through her participation in preparing documents, staying abreast of developments in this case, responding to discovery requests, and sitting for deposition. *See Cole v. Asurion Corp.*, 267 F.R.D. 322, 327–28 (C.D. Cal. 2010); La Barbera Dep. Tr. 35:7-19; 87:21-88:4. Further, Plaintiff understands the

nature of a class action and her duty to fairly and adequately represent the interests of the Classes. La Barbera Dep. Tr. 35:7-14; La Barbera Decl. ¶¶ 7-8.

Plaintiff's counsel is equally committed to pursuing this action on behalf of the Class members' best interests and has no conflicts of interest. When determining whether Class Counsel is adequate, "a court may examine the attorneys' professional qualifications, skill, experience, and resources. The court may also look at the attorneys' demonstrated performance in the suit itself." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (citation omitted). Plaintiff's counsel, Faruqi & Faruqi, LLP is a well-respected firm with extensive experience in complex and class action litigation. *See* Peter Decl., ¶¶ 5-8, Ex. 39 (Firm Resume of Faruqi & Faruqi LLP). Class Counsel further holds the resources necessary to vigorously litigate this action. Peter Decl., ¶ 8. Further, Plaintiffs' Counsel have demonstrated their skill in this litigation, defeating Defendant's initial motion to dismiss and engaging in substantial motion and discovery practice in an efficient manner. Therefore, Plaintiff and her counsel are adequate.

### 5.   Rule 23(b)(2) Injunctive Relief

Finally, Plaintiff also requests the Court certify the Classes under Rule 23(b)(2). Rule 23(b)(2) permits the court to certify a class where the party against whom the relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). The burden under this standard is low. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id*. As shown above, Olé has committed a standard and uniform practice of packaging and advertising the Products in a false and misleading manner. While Olé ██████████████████████████████████ ████████████████████████████████████████████████ still contain the Mexican Representations.   Yet, despite knowing these Mexican

Representations are misleading and material, Olé continues to market and sell the U.S. manufactured Products with these same Mexican Representations.

Plaintiff has standing to pursue injunctive relief because she would purchase the Products again in the future if she knew with confidence that they were manufactured in Mexico. However, Plaintiff cannot currently rely with confidence on Defendant's representations regarding where the Products are manufactured now or where they will be manufactured in the future, as ███████████████████ ████████████████████████████████████████████████████████ ███████ La Barbera Decl. ¶ 5; *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (finding that "previously deceived consumer[s]" may be under a "threat of future harm" when they are unable to rely on a product's labeling in the future and do not purchase the products as a result, despite desiring to do so); *Claiborne v. Church & Dwight Co., Inc.*, No. 3:17-cv-00746-L-JLB, 2017 WL5256752, at *3 (S.D. Cal. Nov. 13, 2017). Therefore, Plaintiff, like in *Claiborne* and *Davidson*, has "standing to pursue an injunction prohibiting continued false advertising because such relief could restore [her] trust, thus aiding [her] in making informed purchasing decisions in the future." *Id*. Through injunctive relief, Plaintiff's injury can be rectified by an injunction prohibiting Olé from making the deceptive representations on the Products that are still being manufactured in the U.S. as described herein. Accordingly, injunctive relief is appropriate with respect to the class as a whole and Rule 23(b)(2) is satisfied.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed Classes, designate Plaintiff as Class representative, and appoint Faruqi & Faruqi, LLP as Class Counsel. In the alternative, and to the extent the Court believes Plaintiff has not satisfied any of the elements for class certification, Plaintiff respectfully requests that the Court afford her leave to file a renewed motion for class certification.

1   Dated: March 13, 2023                    **FARUQI & FARUQI, LLP**

2                                      By:   */s/ Lisa T. Omoto*

3                                            Lisa T. Omoto
                                             *lomoto@faruqilaw.com*
4                                            1901 Avenue of the Stars Suite 1060
5                                            Los Angeles, California 90067
                                             Telephone: (424) 256-2884
6                                            Facsimile: (424) 256-2885

7

8                                            Timothy J. Peter (*pro hac vice*)
                                             *tpeter@faruqilaw.com*
9                                            1617 JFK Boulevard, Suite 1550
10                                           Philadelphia, PA 19103
                                             Telephone: (215) 277-5770
11                                           Facsimile: (215) 277-5771

12

13                                           *Counsel for Plaintiff Tammy La Barbera*
                                             *and the proposed Classes*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

Dated: March 13, 2023        By: */s/ Lisa T. Omoto*

                             Lisa T. Omoto