1
2
3
4

KILPATRICK TOWNSEND & STOCKTON LLP
Nancy L. Stagg (State Bar No. 157034)
nstagg@kilpatricktownsend.com
12255 El Camino Real, Suite 250
San Diego, CA  92130
Telephone:858 350 6156
Facsimile: 858 350 6111

5
6
7

Joe P. Reynolds (Admitted *pro hac vice*)
jreynolds@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 1100
Atlanta, GA  30309
Telephone:  404 815 4912
Facsimile:  404 541 4618

8
9

Attorneys for Defendant
OLÉ MEXICAN FOODS, INC.

10
11
12
13

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14
15

TAMMY LA BARBERA,
individually and on behalf of all others
similarly situated,

16

Plaintiff,

17

v.

18

OLÉ MEXICAN FOODS, INC.,

19
20

Defendant.

Case No. 5:20-cv-02324-JGB (SP)

**DEFENDANT OLÉ MEXICAN FOODS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFF'S EXPERT REPORT AND TESTIMONY OF J. MICHAEL DENNIS PH.D. [*DAUBERT*]**

Date:    June 5, 2023
Time:    9:00 AM
Ctrm.:   Riverside Courtroom 1
Judge:   Hon. Jesus G. Bernal

21
22

Trial Date:  November 7, 2023

23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Pages**

NOTICE OF MOTION AND STATEMENT OF ISSUES TO BE DECIDED ................................................................................................ 1

I.     SUMMARY OF REASONS WHY PLAINTIFF'S EXPERT j. MICHAEL DENNIS'S REPORT AND TESTIMONY SHOULD BE EXCLUDED. .................................... 2

II.    BACKGROUND ........................................................................ 4

III.   LEGAL STANDARD ................................................................ 6

       A.     The Court Acts As A "Gatekeeper" To Exclude Junk Science. ......................................................................... 6

       B.     Unfinished Proposed Surveys Are Insufficient To Support A Damages Model Under *Comcast*. ..................... 7

IV.    ARGUMENT ............................................................................. 8

       A.     Dennis's Proposed Damages Model Must Be Excluded. ..................................................................... 8

              1.     Dennis's Proposed Conjoint Survey Is Incomplete. ........................................................ 8

              2.     The Time For Dennis To Complete The Conjoint Survey Proposal Has Passed And No Good Cause Exists to Extend It. .......................... 11

       B.     Dennis's Consumer Surveys Are Not Performed In Accord With Generally Accepted Principles. ................... 12

       C.     Omitting the Back of the Product Packaging Containing the "Made in U.S.A." Label Renders Dennis's Expert Opinions and Surveys Irrelevant and Unreliable. ...................................................................... 16

              1.     Dennis's Consumer Perception Survey is Biased and Leading. .............................................. 18

              2.     Dennis's Consumer Perception Survey Does Not Use the Correct Reasonable Consumer Test. ...................................................................... 20

V.     CONCLUSION ...................................................................... 21

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT
AND TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

i

1

2 **TABLE OF AUTHORITIES**

3 **Page(s)**

4 CASES

5 *Abaxis, Inc. v. Cepheid*,
6    No. 10-CV-02840-LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ................ 7

7 *Estate of Barabin v. AstenJohnson, Inc.*,
8    740 F.3d 457 (9th Cir. 2014) ..................................................................... 6

9 *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
   923 F. Supp. 2d 1245 (S.D. Cal. 2013) ................................................ 18
10

11 *Carnegie Mellon Univ. v. Hoffmann–LaRoche, Inc.* .................................... 7
   55 F. Supp. 2d 1024, 1034-35 (N.D. Cal. 1999)
12

13 *Cheslow v. Ghirardelli Chocolate Co.*,
   472 F. Supp. 3d 686 (N.D. Cal. 2020)................................................. 16
14

15 *Comcast Corp. Behrend*
   569 U.S. 27, 35 (2013) ..................................................................... 7
16

17 *Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .......................................................... 1, 6, 20, 21
18

19 *F.T.C. v. Commerce Planet, Inc.*,
   642 Fed. Appx. 680 (9th Cir. 2016) .................................................. 14
20

21 *Freitas v. Cricket Wireless, LLC*,
   2022 WL 318061 (N.D. Cal. July 29, 2022) ......................................... 8
22

   *Harold Stored, Inc. v. Dillard Dept't Stored*,
23    82 F.3d 1533, 1455 (10th Cir. 1996) ................................................ 12

24 *Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) ................................................. 2, 12, 14
25

26 *In re Kind LLC "HEALTHY AND ALL NATURAL" Litigation*,
   No. 15-MD-2645 (NRB), 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022) ......... 20, 21

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT
AND TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ..................................................................... 20

*Philips v. Ford Motor Company*,
   No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ............... 6

*Pittsburgh Press Club v. U.S.*,
   579 F.2d 751 (3d Cir. 1996) .................................................................. 12

*Pooshs v. Phillip Morris USA, Inc.*,
   287 F.R.D. 543 (N.D. Cal. 2012) ............................................................ 7

*Strumlauf v. Starbucks Corp.*,
   2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ............................... 18, 19, 20

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*,
   2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) ........................... 12, 15, 16

*U.S. v. Various Gold, Silver and Coins*,
   2013 WL 5947292 (D. Or. Oct. 30, 2013) ............................................. 12

*Valador, Inc. v. HTC Corp.*,
   242 F. Supp. 3d 448 (E.D. Va. 2017) ................................................... 18

*Wagner v. Cnty. Of Maricopa*
   673 F.3d 977, 989 (9th Cir. 2012) ......................................................... 7

*Ward v. Apple Inc.*,
   784 Fed. Appx. 539 (9th Cir. 2019) .......................................... 7, 8, 9, 11

*Ward v. Apply. Inc.*,
   2018 WL 934544 (N.D. Cal. Feb. 16, 2018) .......................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. FRCP 16(b)(4) .................................................................. 11

Fed. R. Civ. P. 23 .................................................................................. 7

Fed. R. Civ. P.  23(b)(3) ........................................................................... 7

Fed. R. Evid. 702 .................................................................... 1, 6, 20, 21

25 F.R.D. 351, 429 (West 1960) .............................................................. 12

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

1

Local Rule 7-3 ........................................................................................................... 1

Reference Manual on Sci. Evid. (3d ed.) at 373-76. ...................................................... 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND STATEMENT OF ISSUES TO BE DECIDED

**PLEASE TAKE NOTICE** that on June 5, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, Defendant Olé Mexican Foods ("Olé") will move to Exclude Plaintiff's Expert Report and Testimony of J. Michael Dennis Ph.D.

Olé seeks to exclude the expert report and testimony of J. Michael Dennis, Ph.D. relied upon by Plaintiff in her Motion for Class Certification, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Nancy L. Stagg in Support and the exhibits thereto, any reply brief filed by Defendant, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

**L.R. 7-3 Conference of Counsel**: This Motion took place following the conference of counsel pursuant to L.R. 7-3, which took place on April 19, 2023.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT
AND TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

1

## I.      SUMMARY OF REASONS WHY PLAINTIFF'S EXPERT J. MICHAEL DENNIS'S REPORT AND TESTIMONY SHOULD BE EXCLUDED.

Plaintiff Tammy La Barbera supports her Motion for Class Certification ("Motion") with the expert opinion and report of J. Michael Dennis, Ph.D ("Dennis Report") at ECF 80-1, Ex. 40. In support of Ms. La Barbera's damages model, Dennis opines that his proposed conjoint survey will calculate "any price premium solely attributable to the Challenged Representations" and is "typical of, and generally accepted by, experts in this field of consumer market research." *Id.* ¶ 26. However, Dennis's conjoint proposal is nothing more than a mere shell of an idea of what a conjoint survey specific for this case would be, not an actual conjoint survey. Dennis conceded that he has not completed the design of the conjoint survey and that he does not currently plan to complete the design or conduct the conjoint survey. Deposition of J. Michael Dennis, Ph.D ("Dennis Depo.") dated April 6, 2023, attached to the Declaration of Nancy L. Stagg ("Stagg Decl."), ¶5, Exhibit 1 at 36:1-11. In any event, under the current Scheduling Order, there is no time left for Dennis to complete or conduct any additional surveys or provide any supplemental report. Expert reports have been completed, experts have been deposed, and all discovery closes in this case on June 19, 2023. ECF 53.

Additionally, Dennis's "consumer perception survey" was designed with substantial defects, and its execution was so deficient that the survey should be excluded. In short, the survey results Dennis relies on were not conducted "in accordance with generally accepted principles." *See Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988).

Dennis did not conduct the consumer perception survey himself. He outsourced the performance of the survey to another company, Dynata. While directing another company to perform a survey on his behalf does not disqualify the survey or the results per se, Dennis did not perform the "pretest," which he concedes is an important quality control test to make sure that the design of the survey and the

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

2

1    results therein are proper, relevant, and reliable. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo.

2    at 29:10-30:12. Additionally, Dennis does not have any knowledge of how Dynata

3    performs the survey. Dennis simply asks this Court to trust that unknown persons at

4    Dynata performed the test properly. Dennis does not know who the survey

5    participants were, how Dynata recruited and compensated the purported participants,

6    where the participants were located when they took the survey, what devices were

7    used to respond to the survey, whether the respondents are part of the proposed class

8    they seek to certify, or even whether there were actual individuals behind the survey

9    responses. *Id.* at 31:17-33:5, 73:4-10. The survey results are entirely hearsay.

10          In addition, Dennis's untested design of the consumer perception survey

11   omitted key information from the survey. The survey provided the survey

12   respondents with the front of the Olé's product labels but did not equally provide the

13   respondents with the product's back label, which includes the disclosure at issue in

14   this lawsuit: "Made in U.S.A." Instead, the survey included only an optional, small,

15   link in the bottom left corner of the image to click to view the back of the Olé product

16   package. ECF 80-1, Ex. 40, ¶ 48 at p. 15. The survey did not track or measure

17   whether the survey respondents clicked to view the back of the package. Stagg Decl.,

18   ¶ 5, Ex. 1, Dennis Depo. at 45:19-24. Further, Dennis's survey asks consumers to

19   identify where they believe the product is made "based on" the front label of the

20   product they reviewed. ECF 80-1, Ex. 40, ¶¶ 52-53. As a result, the survey question

21   suggests to respondents that the answer to the question must be found on the product

22   packaging itself. Dennis failed to perform any pretest despite acknowledging a pretest

23   is a crucial step to test the reliability and effectiveness of the survey and to determine

24   whether the survey was successful in testing his hypothesis – here whether there is

25   any consumer preference or perception about the manufacturing location of Olé's

26   products.

27          Based on the above, Dennis's consumer perception and referendum surveys are

28   unreliable, failed to follow generally acceptable scientific principles, and should be

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

3

completely disregarded. In addition, Dennis's opinions to support any damages model in Ms. La Barbera's Motion are entirely speculative and the Court should not rely on Dennis's "proposed" conjoint survey as it is merely an empty shell of what a survey would ultimately look like.

For these reasons, Olé moves to exclude Dennis's opinions and expert report.

## II.   BACKGROUND

On November 6, 2020, Plaintiff Juan De Dios Rodriguez filed his original Class Action Complaint against Defendant Olé. ECF 1; Stagg Decl. ¶ 2. On September 21, 2021, the first scheduling order in the case was entered. ECF 32; Stagg Decl. ¶ 2. On September 27, 2022, the Court granted the parties' stipulation to extend the following deadlines:

| Event | New Deadline |
|---|---|
| Deadline for Initial Designation of Expert Witnesses and Initial Expert Reports | February 6, 2023 |
| Deadline for Designation of Rebuttal Expert Witnesses and Rebuttal Expert Reports | March 6, 2023 |
| Class Certification Motion Filing Deadline | March 13, 2023 |
| All Discovery Cut-Off (including hearing of discovery motions) | June 19, 2023 |

ECF 53; Stagg Decl. ¶ 2.

On November 22, 2022, Plaintiff Rodriguez filed a Motion to Modify the Scheduling Order and for Leave to File First Amended Complaint, seeking to substitute Plaintiff Rodriguez with Plaintiff Tammy La Barbera. ECF 58; Stagg Decl. ¶ 3. The Court granted Plaintiff Rodriguez's motion and Plaintiff La Barbera filed her First Amended Class Action Complaint on January 10, 2023. ECF 64 and 65; Stagg Decl. ¶ 3.

On February 6, 2023, Plaintiff served the Dennis Report. On March 13, 2023, Ms. La Barbera filed her Notice of Motion and Motion for Class Certification. ECF 80; Stagg Decl. ¶ 3. On March 31, 2023, the Court granted the parties' stipulation to extend Olé's deadline to oppose Ms. La Barbera's Motion for Class Certification to

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

April 17, 2023, Ms. La Barbera's reply deadline was extended to May 8, 2023, and the class certification motion hearing was set to June 5, 2023. ECF 86; Stagg Decl. ¶ 4. Discovery deadlines, including the deadline to designate and produce expert reports, were not modified. Stagg Decl. ¶ 4. Dennis was deposed by Olé on April 6, 2023. *Id.* The deposition of Olé's rebuttal expert, Sarah Butler, took place on April 20, 2023. *Id.*

Ms. La Barbera asked Dennis to "conduct a consumer perception survey to determine whether the reasonable consumer was misled by the [Olé]'s advertising, packaging, and labeling of the Products using the Challenged Representations" and "to propose a method for conducting a market research study that can be used for measuring any price premium paid by Class Members that is solely attributable to the Challenged Representations." ECF 80-1, Ex. 40, ¶ 23.

Dennis opined that based on his "consumer perception survey," the Challenged Representations "deceived reasonable consumers into believing the Products are made in Mexico" and that such representations "are material to consumers' purchases of the Products." ECF 80-1, Ex. 40, ¶ 25. Dennis concluded that for Olé's Burrito Grande Flour Tortillas, Soft Taco Flour Tortillas, and Sabrosisimas Corn Tortillas, "57.9% of consumers perceived the packaging… to convey that the Products were made in Mexico," while only "39.7% perceive the Products to be made in the U.S." ECF 80-1, Ex. 40, ¶ 36. However, the survey question required the respondent to view *only* the front of the packaging, while the back of the packaging, which contains the "Made in U.S.A." affirmation, was *optional* to view. ECF 80-1, Ex. 40, ¶ 48.

The option to view "more of the packaging" is below the picture of the front packaging, is in small font, and was not required by the survey. ECF 80-1, Ex. 40, ¶ 48. Then, for the question "based on the packaging we have shown you, where do you think the TORTILLA product was made?" only the front of the packaging is shown. ECF 80-1, Ex. 40, ¶ 53. The same limited circumstances are present for the question "Where outside the United States do you think the TORTILLA product was

made?". ECF 80-1, Ex. 40, ¶ 53. Moreover, the survey participants were given limited and leading choices to respond. Respondents were only able to choose between "In the United States," "Not in the United States," and for those who answered "Not in the United States," the only choices were "Mexico," "Central or South America," or "Somewhere Else." ECF 80-1, Ex. 40, ¶¶ 52, 53.

Dennis also opined that "if asked to conduct a price premium survey and analysis," he would undertake a "conjoint survey" to measure the price premium solely attributable to the Challenged Representations. ECF 80-1, Ex. 40, ¶ 61-63. However, as of the date of his deposition, April 6, 2023, Dennis had no plans to complete the design of the proposed conjoint survey, nor has he been asked to by Ms. La Barbera to do so. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 36:1-17.

## III. LEGAL STANDARD

### A. The Court Acts As A "Gatekeeper" To Exclude Junk Science.

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert only if it is based on sufficient facts or data, results from reliable principles and methods, and will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The district court "act[s] as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). The inquiry focuses on the soundness of the expert's methodology, not the correctness of the expert's conclusions. *Id.* "The Ninth Circuit has approved of the application of the standard in *Daubert* to expert reports in support of or in opposition to motions for class certification." *Philips v. Ford Motor Company*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *25 (N.D. Cal. Dec. 22, 2016).

In assessing the scientific validity of an expert's methodology, courts should consider "(1) whether a theory or technique 'can be (and has been) tested;' (2)

'whether the theory or technique has been subjected to peer review and publication;' (3) 'the known or potential rate of error;' and (4) whether it is generally accepted in the scientific community.'" *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2012 WL 2979019, at *1 (N.D. Cal. July 19, 2012) (quoting *Wagner v. Cnty. Of Maricopa*, 673 F.3d 977, 989 (9th Cir. 2012)). Courts should also consider "whether an expert prepared his methodology for purposes of litigation or articulated the methodology before litigation and without any incentive to reach a particular outcome." *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547 (N.D. Cal. 2012) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)). Finally, "[a] methodology may not be reliable if an expert 'fail[s] to address and exclude alternative explanations for the data on which he bases his findings' or 'reject[s] studies reporting contrary empirical findings.'" *Id.* at 546 (alterations in original) (quoting *Carnegie Mellon Univ. v. Hoffmann–LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1034-35 (N.D. Cal. 1999)).

### B.    Unfinished Proposed Surveys Are Insufficient To Support A Damages Model Under *Comcast.*

"[A] model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposed of Rule 23(b)(3)." *Comcast Corp. Behrend,* 569 U.S. 27, 35 (2013) (internal citations omitted). While "calculations need not be exact…any model supporting a 'plaintiff's damages case must be consistent with its theory of liability. And for the purposes of Rule 23, courts must conduct a 'rigorous analysis' to determine whether that is so." *Id.* The Ninth Circuit has affirmed exclusions of unfinished proposed damages models or promises to prepare such models as sufficient to satisfy *Comcast* and Rule 23(b)(3) requirements. *See Ward v. Apple Inc.,* 784 Fed. Appx. 539, 540 (9th Cir. 2019) ("The district court did not abuse its discretion in determining that Plaintiffs'

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MICHAEL DENNIS CASE NO. 5:20-CV-02324-JGB-SP

7

submission was insufficient…the court was 'unable to fulfill its obligation' because plaintiffs gave the court little to analyze…[Plaintiffs'] expert merely asserted that he would be able to develop a model at some point in the future."); *See also Freitas v. Cricket Wireless, LLC*, 2022 WL 318061, *4 (N.D. Cal. July 29, 2022) (rejecting plaintiff's price premium damages model stating "is not enough for [plaintiff] to just say that the [model] controls for other factors; [plaintiff] must show the [district court] that the model can.") Here, there is nothing for the Court (or Defendant and its counsel) to examine (or cross-examine) to determine whether the final theory (in the form of a completed survey design) properly measures class damages and whether the conducted survey in fact measures what it purports to measure.

## IV.   ARGUMENT

### A.   Dennis's Proposed Damages Model Must Be Excluded.

#### 1.   Dennis's Proposed Conjoint Survey Is Incomplete.

Ms. La Barbera seeks to establish that a damages model "capable of measurement on a class basis" exists. ECF 78-2, Plaintiff's Class Certification Motion, p. 18-20. To this end, Dennis opines that his proposed conjoint survey will calculate "any price premium solely attributable to the Challenged Representations" and is "typical of, and generally accepted by, experts in this field of consumer market research." ECF 80-1, Ex. 40 ¶ 26. However, Dennis's proposed conjoint survey is nothing more than a mere shell of an idea for a conjoint survey. Dennis's proposed conjoint survey is currently only an idea, and an incomplete one at that. No survey has been drafted or produced in this case. This tactic has been specifically rejected by the Ninth Circuit.

In *Ward v. Apple Inc.*, 784 Fed. Appx. 539 (9th Cir. 2019), the Ninth Circuit affirmed Judge Yvonne Rogers's denial to certify a class based on the failure to produce a proper damages model specific to the case. *Ward,* 784 Fed. Appx at 540. Plaintiff in *Ward* presented a similarly deficient proposed damages model. Judge Rogers criticized the unfinished proposed model as "essentially lacking any data-

driven analysis. Instead, he refers generically to an extant 'common methodology and data,' which he will supposedly use to 'reliably assess the existence and amount of damages to the Class members.'" *Ward v. Apply. Inc.,* 2018 WL 934544, *3 (N.D. Cal. Feb. 16, 2018). On appeal, the Ninth Circuit held that the "district court did not abuse its discretion in determining that plaintiffs' submission was insufficient. Plaintiffs argued that the district court did not conduct the requisite 'rigorous analysis' but as the district court recognized, the court was 'unable to fulfill its obligation' because plaintiffs gave the court little to analyze…instead, he merely asserts that he would be able to develop a model at some point in the future." *Ward,* 784 Fed. Appx. at 540. Plaintiff has done the same here. No damages survey has been produced in connection with the now completed expert discovery. Dennis's opinion regarding an incomplete and unconducted conjoint survey should be excluded for the same reasons.

When asked what aspects of the conjoint study remain to be designed, Dennis responded "various details. I need to fully specify the conjoint design in terms of the descriptions of the attributes, the selection of the levels of the attributes…the description of the attributes to be provided to the respondents." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 9:3-11. Dennis testified that "the details of actually having a fully specified conjoint survey, there's some work still to be done on that." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 9:11-13. Dennis claimed that he has completed "maybe two-thirds of the work, something like that." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 9:14-25. Yet no drafts of the conjoint survey, whether complete or incomplete, were produced with expert report, in response to Ole's subpoena, or at his deposition. *See* ECF 80-1, Ex. 40; *Also see* Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 8:16-19, 36:1-11; *also see* Ms. La Barbera's Response to Olé's Subpoena To Produce Documents dated March 2, 2023, attached to the Stagg Decl. as Exhibit 3.

Despite claiming that the "major" decisions have been completed, Dennis's own testimony belie that claim – Dennis has nothing more than a general idea of

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

9

what he would propose for a conjoint survey in this case. *See* ECF 80-1, Ex. 40 at ¶ 88. For example, Dennis testified that brand, label claim, and price make up the "three major attributes" for his proposed conjoint study. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 10:2-10. As to the brand, Dennis testified that "I have an initial list, I think, I used in my screen survey…So it's not a definitive list yet. I understand there will be some more data to be provided to me potentially in this litigation if I'm asked to do a conjoint survey." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 10:11-22. Even when asked how he would factor the proposed class period into the brand selection, Dennis testified "[w]ell that is a good question... But I'm – sure. So I'll look at whatever sales data is provided for the entire class period to see what the relevant products are." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 11:10-21; 58:7-11. As to price attributes, Dennis testified that "[n]o. I have not specified the levels yet for the price attribute." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 18:22-19:1. Dennis also conceded that he has not decided which of the competitor products he would be using in the conjoint survey to the products at-issue in this case. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 20:2-16.

Not only has Dennis not completed a design that this Court analyze or that Defendant can rebut, Dennis does not have any plans to complete the design of the survey, conduct the pre-test, or conduct the actual survey. Dennis was asked if he had a current plan or a specific target date to complete the design of his conjoint survey, he responded "no, not at all." Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 36:1-11. In fact, he testified at his deposition that he has not even made the request for the information he needs from Ms. La Barbera to complete the survey because he has not been asked to do the conjoint survey. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 36:12-17. Dennis's "proposed conjoint survey" is merely a vague concept, and he conceded at his recent deposition that there is no current plan to complete the conjoint design or conduct the conjoint study once designed. Stagg Decl., ¶ 5, Ex. 1, Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 36:1-11.

1  Dennis's proposed conjoint survey is precisely the type of incomplete damage
2  model that Judge Rogers rejected, a decision affirmed by the Ninth Circuit. *Ward v.*
3  *Apple Inc.*, 784 Fed. Appx. 539, 540 (9th Cir. 2019). Neither the Court nor Olé have
4  sufficient information to evaluate Dennis's "TBD" conjoint survey. Nothing was
5  produced to review. By his own admission, Dennis has not completed the design, he
6  has not chosen any details specific to this case, such as the competitor brands, the
7  labels, or the price point. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 10:2-22; 11:10-21
8  and 20:2-16. As in *Ward*, this Court is "unable to fulfill its obligation" to perform a
9  "rigorous analysis" of Dennis's damages model because he has not provided a
10 "workable method for class wide determination" *Ward*, 784 Fed.Appx at 540. The
11 Ninth Circuit held that plaintiff in *Ward* did not provide an imperfect model, rather,
12 "they have provided only a promise of a model to come." *Id.* at 541. Here too,
13 Dennis has done nothing more than a promise of a model to come – whenever Ms.
14 La Barbera decides to request it. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 36:1-17.

15      2.    The Time For Dennis To Complete The Conjoint Survey
16            Proposal Has Passed And No Good Cause Exists to Extend It.

17 As discussed above, Dennis has not been asked and does not have any plans
18 to complete the design for his conjoint study, let alone conduct the study. Stagg
19 Decl., ¶ 5, Ex. 1, Dennis Depo. at 36:1-17. And, there is no time left for Dennis to
20 complete the design and conduct the survey according to the Scheduling Order in
21 this action. The time for expert opinions and reports has now passed. ECF 53, at 2.
22 Ms. La Barbera has not sought any relief from the Scheduling Order under
23 FRCP 16(b)(4) or otherwise shown good cause to obtain an extension to the expert
24 discovery schedule. Under the current discovery schedule, Olé would not have an
25 opportunity to evaluate any additional opinion by Dennis, or examine and rebut a
26 conducted conjoint survey prior to the close of discovery in this action. To allow
27 such now would be unduly prejudicial and burdensome to Olé. Olé has already
28 prepared and produced an expert rebuttal report and has taken Dennis's deposition.

Olé produced its rebuttal expert for deposition. Stagg Decl. ¶ 4. To prevent undue expense and burden, the Court must exclude any additional opinion offered by Dennis regarding Ms. La Barbera's damages model and any late produced conjoint survey.

**B.    Dennis's Consumer Surveys Are Not Performed In Accord With Generally Accepted Principles.**

Survey evidence is only admissible if it was obtained "in accordance with generally accepted principles" and "the results were used in a statistically correct manner." *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988). "If, however, there are substantial design defects in the survey or its execution is deficient, then the survey should be completely excluded. *U.S. v. Various Gold, Silver and Coins*, 2013 WL 5947292, *4 (D. Or. Oct. 30, 2013)(citing *Harold Stored, Inc. v. Dillard Dept't Stored,* 82 F.3d 1533, 1455 (10th Cir. 1996); *Pittsburgh Press Club v. U.S.*, 579 F.2d 751, 759-60 (3d Cir. 1996); *accord Keith*, 858 F.2d at 480; *See also Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2008 WL 4755611, *4 (C.D. Cal. Jan. 7, 2008)("Moreover, the [survey] is so methodologically flawed that the dangers of unfair prejudice or confusing or misleading the jury substantially outweigh any probative value the survey may offer.")

The Judicial Conference of the United States's *Handbook of Recommended Procedures for the Trial of Protracted Cases* provides a list of important factors to consider when determining whether a survey is reliable:

1.    The proper universe was selected and examined.

2.    A representative sample was drawn from that universe.

3.    The mode of questioning the interviewees was correct.

4.    The person conducting the survey were recognized experts.

5.    The data gathered were accurately reported.

6.    The sample design, the questionnaire and the interviewing were in accordance with generally accepted standard of objective procedure

1       and statistics in the field of such surveys.

2       7.    The sample design and the interviews were conducted independently of

3             the attorneys; and

4       8.    The interviewers trained in this field had no knowledge of the litigation

5             or the purpose for which the survey was used.

6       *Handbook of Recommended Procedures for the Trial of Protracted Cases* 25

7       F.R.D. 351, 429 (West 1960). The current Reference Guide on Survey Research

8       prepared by the Federal Judicial Center also contains similar factors to consider

9       when determining the reliability of a survey. *See Reference Manual on Sci. Evid. (3d*

10      *ed.)* at 373-76.

11          Here, Dennis failed to perform a pretest of the consumer perception and the

12      referendum surveys despite knowing the importance of the pretest for quality

13      control and to test the reliability of both the design and the operational mechanics of

14      the survey. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 29:16-30:12, 70:20-71:22; ECF

15      80-1, Ex. 40 ¶¶ 108-109. Dennis testified that the pretest is important to "make sure

16      that essentially the questionnaire is programmed correctly, that there are no surprises

17      in terms of questions inadvertently not getting asked to respondents." Stagg Decl., ¶

18      5, Ex. 1, Dennis Depo. at 29:10-23. Dennis also testified that the pretest was

19      "[e]ssentially its more of an operational check on things" but also that he would look

20      at data and to "make sure that I have respondents that are going all the way through

21      the survey. Potentially respondents could drop off because they are frustrated with

22      the questionnaire or maybe there's an operational hiccup in the survey." Stagg

23      Decl., ¶ 5, Ex. 1, Dennis Depo. at 29:23-30:12. In his report, Dennis states that the

24      pretest is conducted "for the following purposes: (i) for quality control and quality

25      assurances testing of the survey instrument, (ii) to validate the survey questionnaire

26      is programmed correctly to my specifications, (iii) to identify any survey questions

27      that might be unclear to respondents, and (iv) to analyze the data to identify any

28      problems, such as unexpected missing data." ECF 80-1, Ex. 40 ¶ 109.

1    Dennis's failure to perform the pretest undermines the reliability of the

2    surveys. As Dennis testified, the pretest is important to make sure the survey is

3    conducted properly. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 29:16-30:12. Dennis

4    could not affirm that the proper universe of representatives were selected or

5    examined. His failure to conduct the pretest introduces a reliability question about

6    the sample design, the questionnaire, and if the interviewing was done in accordance

7    with generally accepted standard of objective procedures and statistics in the field of

8    such surveys. *See* Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 29:16-30:12.

9    Furthermore, Dennis did not conduct the surveys himself. He retained another

10   company, Dynata, to perform the survey according to specifications. ECF 80-1, Ex.

11   40 ¶ 60. While failing to conduct the survey himself does not render the survey or

12   the results unreliable *per se*, the fact that Dennis failed to have any oversight,

13   knowledge, or information about how Dynata conducted the survey, recruited the

14   purported survey respondents, or even where and how the respondents completed

15   the survey is against generally accepted principals. *See F.T.C. v. Commerce Planet,*

16   *Inc.*, 642 Fed. Appx. 680, 682 (9th Cir. 2016) (affirming exclusion of expert

17   testimony and survey because the expert did not conduct the survey himself and

18   there was a failure to demonstrate that the survey was "conducted according to

19   acceptable principals.") Dennis asks this Court to trust Dynata performed the test

20   properly despite lacking the basic knowledge of how the survey was conducted and

21   despite failing to conduct the quality control pretest. Stagg Decl., ¶ 5, Ex. 1, Dennis

22   Depo. at 29:16-30:12, 70:20-71:22.

23   "The proponent must show that the survey was conducted in accordance with

24   generally accepted survey principals and the results were used in a statistically

25   correct manner." *Keith,* 858 F.2d. at 480. Dennis opines that Dynata is reliable

26   because "based on [his] experience, Dynata is regarded as one of the most credible

27   and reliable non-probability online panels having the necessary scale for this study."

28   ECF 80-1, Ex. 40 ¶ 60. Dennis also testified that Dynata programmed his survey

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

14

1   "under [his] active supervision," but his testimony shows the contrary. At his

2   deposition, Dennis lacked basic knowledge of how Dynata recruits participants,

3   what type of incentive programs they offer, how Dynata tracks participation, if at

4   all, or how the survey participants completed the survey. *Id.*; Stagg Decl., ¶ 5, Ex. 1,

5   Dennis Depo. at 31:17-33:5, 73:4-10, 86:3-25. In addition, when Olé sought records

6   from Dennis regarding his agreement with Dynata regarding the surveys Dynata

7   performed and records related to Dynata's performance of the surveys, including

8   information about the survey respondents, Dennis and Plaintiff objected to Olé's

9   requests and stated that Dennis did not have such information in his possession,

10   custody or control, or that any such information was privileged.  See Stagg Decl. ¶9,

11   and Ex. 5, Letter dated March 2, 2023, from Plaintiff's attorney Lisa Omoto.

12      This Court previously excluded a survey because "no specific universe of

13   respondents [were] chosen…" *Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2008 WL

14   4755611, *4 (C.D. Cal. Jan. 7, 2008). This Court held that the failure to properly ask

15   "filter" questions to determine that respondents were "past or prospective consumers

16   of Splenda, and to weed out inappropriate respondents" was sufficient to exclude the

17   survey. The Court should reach the same result here where Dennis asks the Court to

18   trust him and his prior experience with Dynata that the surveys were conducted

19   properly with the representative class. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at

20   31:17-33:5, 73:4-10. In any event, Dennis admitted at his deposition that the surveys

21   he did conduct did not contain a sufficient sample of actual putative California class

22   members as respondents. Stagg Decl., ¶5, Ex. 1, Dennis Depo. at 75:10-76:24.

23      In sum, Dennis failed to conduct his consumer perception and referendum

24   survey pursuant to generally accepted principles. The pretest, as he stated in his

25   report, is "a dress rehearsal for the data collection" and important for "quality

26   control and quality assurance testing of the instrument, to validate that they survey

27   questionnaire is programmed correctly to [his] specifications, to identify any survey

28   questions that might be unclear to the respondents, and to analyze the data to

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

15

identify any problems…" ECF 80-1, Ex. 40 ¶ 109. None of this was done. Dennis's failure to perform the pretest and his lack of oversight of Dynata go beyond the weight of his opinions and conclusions. The methodologies he employed to conduct the surveys Ms. La Barbera relies on are so "methodologically flawed that the dangers of unfair prejudice or confusing or misleading the jury substantially outweigh any probative value the survey may offer." *See Sugar Ass'n, Inc.,* 2008 WL 4755611, \*4 ) ("Moreover, the [survey] is so methodologically flawed that the dangers of unfair prejudice or confusing or misleading the jury substantially outweigh any probative value the survey may offer.")

## C. Omitting the Back of the Product Packaging Containing the "Made in U.S.A." Label Renders Dennis's Expert Opinions and Surveys Irrelevant and Unreliable.

A consumer perception survey that deprives survey respondents of key information about a product that would be available in the marketplace is not proper evidence of consumers' understanding of that product and is therefore irrelevant and, ultimately, unreliable. *See Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 695 (N.D. Cal. 2020).

In *Cheslow*, the plaintiffs alleged that Ghirardelli's "Premium Baking Chips Classic White Chips" product was misleadingly labeled because it did not contain white chocolate. After the court dismissed the plaintiffs' complaint because no reasonable consumer would understand "white" to refer to "white chocolate" as opposed to the color of the baking chips, the plaintiffs attempted to salvage their case by attaching a survey to their amended complaint. *Id*. at 689. The plaintiffs surveyed nearly 1,300 respondents, showing them the front panel of the product label, and then asking, "Based on your review of this package, do you think that this product contains white chocolate." *Id*. A remarkable 92% of respondents indicated they believed the product contained white chocolate. *Id*. Although the court noted that it had to accept as true all factual allegations in the complaint and attached to the pleadings—including the allegations concerning the survey and the survey

1  itself—the court refused to find that the survey was probative of consumer

2  confusion:

3      What's notable about the survey is not what it does allege but

4      what it fails to address. As defendant points out, the survey only

5      showed respondents the front panel of the product. . . . ***By***

6      ***omitting the back panel, the survey deprived respondents of***

7      ***relevant information***, namely the ingredient list. As this court's

8      prior order makes clear, where the defendant does not commit a

9      deceptive act, the reasonable consumer cannot entirely disregard

10     the ingredient list. . . . Because the survey does not address the

11     ingredient list (by omitting the back panel), it cannot transform

12     plaintiffs' unreasonable understanding concerning white chips

13     into a reasonable one.

14  *Id*. at 695 (emphasis added).

15      Here, Dennis's survey questions omit the back of the packaging, depriving

16  respondents of relevant information, namely the "Made in U.S.A." affirmation. *See*

17  *id*. Dennis's survey design only allowed respondents to click on a small link

18  positioned at the bottom of the advertisement in small font size to view the back of

19  the package if they saw the small link and optionally chose to do so. ECF 80-1, Ex.

20  40, p. 15; Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 44:13-21. In addition, Dennis did

21  not record whether any of the respondents clicked and viewed the back of the

22  package. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 45:9-46:18. Dennis testified that

23  he "[tried] to make best efforts here to replicate what consumers – consumers need

24  to make some effort to see the back panel, and this is the way that I figured out to

25  replicate that, as much as I can…" Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 45:19-

26  46:4. He conceded that his survey design was not equivalent to a consumer flipping

27  the product over in their hand as opposed to clicking a link and having to wait on a

28  screen to load. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 45:9-18. Therefore, Dennis's

survey design, by his own admission, is irrelevant to Ms. La Barbera's materiality argument in support of her motion for class certification because there is no determination that the concept of where Olé's products are made can be derived from the alleged Mexican representations or that even if it could, that such a concept is material to the consumer purchasing decision.

          1.     Dennis's Consumer Perception Survey is Biased and Leading.

By repeatedly asking the survey respondents to focus on where the products were made – and diminishing every other factor that could influence their response from survey respondents' consideration – Dennis led consumers to ignore all other relevant information (including the back of the packaging) and signaled that they should assign significant value to only the front of the packaging. Stagg Decl., ¶ 5, Ex. 1, Dennis Depo. at 44:13-21; ECF 80-1, Ex. 40 at p. 15. Courts repeatedly have excluded expert survey testimony, or else found that testimony unreliable, on precisely this basis. See, e.g., *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013) (excluding survey as unreliable where it "suggested to the participants . . . the 'correct' answer"); *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 465 (E.D. Va. 2017) (excluding "unreliable" survey with "improperly suggestive" questions that "repate[ed] 'demand effects' or 'cues' from which a respondent can 'infer the purpose of the survey and identify the 'correct' answers'"); *Strumlauf v. Starbucks Corp.*, 2018 WL 306715, at * 6 (N.D. Cal. Jan. 5, 2018) (noting that "leading and suggestive" survey questions "weaken[] the relevance and credibility of the survey evidence to the point that it sheds no light on the critical question in [the] case," and holding that Dennis's survey was "leading and lacking in reliability" for that reason).

In *Strumlauf*, the District Court in the Northern District of California criticized another consumer survey performed by Dennis for this same reason.[1] In

---

[1] The court ultimately granted summary judgment in favor of the defendant, so it did not reach the issue of whether Dennis's survey should be excluded because it lacked reliability, but the precedent cited throughout the court's decision is clear that use of

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

18

1   *Strumlauf*, the plaintiffs alleged Starbucks underfilled its lattes by allowing foam to

2   account for a portion of the beverages' total volume. Dennis was retained by

3   plaintiffs and presented survey respondents with two images of a latte: (i) one with

4   fluid and foam below a "16 fluid ounce" fill line and (ii) one with fluid below the

5   "16 fluid ounce" fill line but foam above the line. *Strumlauf,* 2018 WL 306715, at *

6   6. Dennis asked respondents which drink they expected to receive when ordering a

7   16 fluid ounce latte. *Id*. The court found "this question leading and lacking in

8   reliability because, as phrased, it presumes an answer: in short, the survey asked

9   whether the 'Fluid' in a '16 fl. oz.' beverage should be '16.'" *Id*. at *7. The question

10   therefore "elicit[ed] responses which are suggested by the question itself and

11   ultimately tests reading comprehension and common sense rather than the likelihood

12   of consumer confusion." *Id*.

13        Here, Dennis employed a strikingly similar tactic. Dennis showed consumers

14   only the front label of the Products and then asked survey respondents "Based on the

15   product labels we just showed you, <u>where</u> do you think the product was made?"

16   ECF 80-1, Ex. 40, ¶ 53. That question communicated to the survey respondent that

17   the answer to the question should be found on the product label presented (which,

18   again, was limited to the front label). Further, for any respondent who independently

19   knew that the product was made in the U.S. or had no view as to where the product

20   was made (because they did not believe the labeling implied the product was made

21   in Mexico), Dennis's survey question suggested they should nevertheless provide an

22   answer based on the limited information presented on the front of the label.

23        Thus, as in *Strumlauf*, Dennis's survey question as phrased "ultimately tests

24   reading comprehension." *Strumlauf,* 2018 WL 306715, at * 7. Instead of employing

25   proper filter questions to determine whether, for example, participants even noticed

26   or considered the Challenged Representations displayed on the Product label or

27   asking participants open-ended questions about their considerations regarding the

28   leading questions is grounds for exclusion.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

19

entire Product packaging, Dennis's questions directed participants to focus on the Challenged Representations and where they suggest the Products were made. ECF 80-1, Ex. 40, ¶¶ 48-59. Those questions, in turn, were not neutral in tone or language. These are precisely the sorts of "improperly suggestive" questions from which respondents "infer the purpose of the survey and identify the 'correct' answers." *Strumlauf*, 2018 WL 306715, at * 6.

> ### 2.   Dennis's Consumer Perception Survey Does Not Use the Correct Reasonable Consumer Test.

Dennis's consumer perception survey does not comport with the Ninth Circuit's reasonable consumer test. In *Moore v. Trader Joe's Co.*, 4 F.4th 874, 886 (9th Cir. 2021), the Ninth Circuit highlighted its alignment with other Circuits, regarding recognition of "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore*, 4 F.4th at 886. Under *Moore*, the impact of the "Made in U.S.A." label present on the back of the packaging on the reasonable consumer must be considered. *Id.* Because Dennis's consumer perception survey does not include the entirety of the Products' packaging, or any similar "Made in U.S.A." representations, the survey and the results are unreliable. *See In re Kind LLC "HEALTHY AND ALL NATURAL" Litigation*, No. 15-MD-2645 (NRB), 2022 WL 4125065, at *14 (S.D.N.Y. Sept. 9, 2022) (excluding Dennis under Rule 702 and *Daubert*).

*In re Kind* involved allegations that defendant Kind LLC violated applicable false advertisement statutes by placing the phrase "All Natural" on its products. *Id.* at *1. To support their claims, plaintiffs retained Dennis who offered a consumer perception survey similar to the one he offers in this case. *Id.* at *9. The district court, analyzing Dennis's survey under *Daubert*, found that Dennis's survey contained biased and leading questions. *Id.* at *10-12. For example, question one in Dennis's *In re Kind* survey showed respondents the Kind bar label and then asked

"what is your expectation for the product?" *Id.* at *10. Dennis provided respondents three answer choices: "will not contain artificial and synthetic ingredients," "will contain artificial and synthetic ingredients," or "not sure/no expectation." *Id.* However, the court stated that this question only allowed "survey participants to select from finite choices, agreeing, disagreeing, or not having an expectation about this definition" and that this "limited inquiry is insufficient to determine in any meaningful sense how reasonable consumers understand the 'All Natural' claim, or to test plaintiffs' theory." *Id.* at *11. The court ultimately excluded Dennis's consumer perception survey stating that it failed to "assist the trier of fact because it is biased, leading, and to the extent it provide[d] any insight, cannot provide the objective standard necessary to answer the key question in this case." *Id.*

The same issues are present here in Dennis's survey. First, Dennis's survey uses the incorrect "reasonable consumer standard" by failing to properly show the entirety of the back of Olé's packaging without requiring respondents to click on small, vague links. ECF 80-1, Ex. 40, ¶ 48, p. 15. Second, Dennis's survey questions are similar to that in *In re Kind*, where it asks "Based on the packaging we have shown you, where do you think the TORTILLA product was made?" and provides only two options: "not in the United States" or "in the United States." ECF 80-1, Ex. 40, ¶ 53. This limited inquiry is insufficient to determine any meaningful sense of how reasonable consumers understand the packaging and instead suggests to respondents that the packaging *is asserting* the origin of the products. Like in *In re Kind*, Dennis's consumer perception survey will not assist the trier of fact and should be excluded.

## V.    CONCLUSION

For the foregoing reasons, Defendant Olé respectfully requests the Court exclude Dennis's expert opinions, testimony and proposed and conducted surveys under Rule 702 and *Daubert*.

1   DATED:  April 28, 2023          Respectfully submitted,

2                                   KILPATRICK TOWNSEND & STOCKTON
                                    LLP
3

4                                        /s/Nancy L. Stagg
5                                        NANCY L. STAGG

6                                   Attorneys for Defendant
                                    OLE MEXICAN FOODS, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP

1

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1</u>

2

The undersigned, counsel of record for Defendant Olé Mexican Foods, Inc.,

3

4

certifies that this brief contains 6938 words, which complies with the word limit of

5

Local Rule 11-6.1.

6

Dated:  April 28, 2023

7

KILPATRICK TOWNSEND & STOCKTON LLP

8

9

*/s/ Nancy L. Stagg*
NANCY L. STAGG

10

Attorneys for Defendant
OLE MEXICAN FOODS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND
TESTIMONY OF MICHAEL DENNIS
CASE NO. 5:20-CV-02324-JGB-SP